UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

\----------------------------------------------------------------- X

                                   :

**VESEVOLD GARANIN**,             :

                                     :

                 Plaintiff,       :

                                     :

            – against –        :    **MEMORANDUM DECISION AND ORDER**

**NICHOLAS MURGOLO, ESQ.**; **MURGOLO &** :
**RUTIGLIANO, ATTORNEYS AT LAW LLP**;      25-CV-1959 (AMD) (PK)
**HONORABLE ANNE-MARIE JOLLY**, in her
official capacity as the Administrative Judge for the :
New York City Family Court; **HONORABLE**
**KEITH E. BROWN**, in his official capacity as a
Judge for the New York City Family Court;     :
**HONORABLE JANET McFARLAND**, in her
official capacity as a Judge for the New York City
Family Court; **HONORABLE MARJORIE R.**    :
**STEINBERG**, in her official capacity as a Judge
for the New York City Family Court;       :
**HONORABLE JACQUELINE CARBERA**, in
her official capacity as a Support Magistrate for the :
New York City Family Court; **BYUN**
**ALEXANDRA**, in her official capacity as a     :
Referee for the New York City Family Court; and
**HONORABLE BEN DARVIL, JR.**, in his official :
capacity as Supervising Judge for the Richmond
County Family Court,                  :

                                     :

                Defendants.     :

\----------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

The *pro se* plaintiff brings this fee-paid action in connection with a child custody dispute in Richmond County Family Court. He sues Richmond County Family Court officials — judges, support magistrates, the court attorney referee, and the court-appointed attorney for the children

— involved in the ongoing child custody and visitation rights proceedings between the plaintiff and the mother of his minor children.  (ECF No. 1.)  Before the Court are the defendants' motions to dismiss for lack of subject matter jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (ECF Nos. 44, 45.)  As explained below, the Court dismisses the plaintiff's claims based on abstention and immunity doctrines and declines to exercise supplemental jurisdiction over the plaintiff's remaining state law claims.

## BACKGROUND[1]

### I.    Factual Background

The plaintiff's claims arise from child custody proceedings in Richmond County Family Court between the plaintiff and Eirena Bykhovsky, the mother of the plaintiff's two minor children.  The plaintiff sues seven individual defendants who work in the Richmond County Family Court —six judges[2] and the court attorney referee, Alexandra Byun (the "Judicial Defendants") — and the court-appointed attorney and law firm representing the plaintiff's children — Nicholas Murgolo, Esq. and Murgolo & Rutigliano, Attorneys at Law LLP (the "Attorney Defendants").  (ECF No. 40 ¶¶ 19–27.)  All the parties reside in New York.  (*Id.* ¶¶ 18–27.)

---

[1] This section is based on the complaint and the documents that are "integral" to it.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *see also Santhosh v. Wells Fargo Bank, N.A.*, No. 25-CV-1447, 2026 WL 1413883, at *1 (E.D.N.Y. May 20, 2026).  Additionally, as explained below, "in resolving a Rule 12(b)(1) motion, 'a district court . . . may refer to evidence outside the pleadings.'" *Molokotos-Liederman v. Molokotos*, No. 23-CV-1654, 2023 WL 5977655, at *5 (S.D.N.Y. Sept. 14, 2023) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

[2] The individual judge defendants are: Judge Anne-Marie Jolly, in her official capacity as the Administrative Judge for the New York City Family Court; Judge Keith E. Brown, in his official capacity as a Judge for the New York City Family Court; Judge Janet L. McFarland, in her official capacity as a Judge for the New York City Family Court; Judge Marjorie R. Steinberg, then a support magistrate, in her official capacity as a Judge for the New York City Family Court; Support Magistrate Jacqueline Carbera, in her official capacity; and Judge Ben Darvil, Jr., in his official capacity as the Supervising Judge of the Richmond County Family Court.  (ECF No. 40 ¶¶ 21–27.)

On or about April 30, 2020, Bykhovsky, represented by Robert W. Hiatt, Esq., filed two New York Family Court Act petitions against the plaintiff in Richmond County Family Court: a family offense petition and a petition for sole legal custody of their two minor children.  (*Id.* ¶¶ 37, 39; *see also id.* at 100 (Summons), 101–04 (Petition for Sole Legal Custody), 105–08 (Family Offense Petition).)[3]  The Family Court entered an *ex parte* temporary order of protection in Bykhovsky's favor against the plaintiff, with an expiration date of August 3, 2020 (*id.* at 110–11), and appointed Murgolo as the attorney for the children (*id.* ¶ 47).  On October 8, 2020, Bykhovsky filed a second family offense petition against the plaintiff, which resulted in a "a full stay-away Order of Protection" from Bykhovsky and the children.  (*Id.* ¶ 48.)  Then-Support Magistrate Steinberg, Support Magistrate Cabrera, Judge Brown, and Referee Byun have presided over the case at various times.  (*Id.* ¶¶ 265–66, 322, 507–08.)

a.      **Family Court-Ordered Visitation and Counseling**

On March 5, 2021, while Bykhovsky's petitions were pending, Referee Byun ordered supervised visitation between the plaintiff and his children.  (*Id.* ¶ 49.)  The Family Court's contract vendor, Comprehensive Family Services ("CFS"), facilitates supervised visitation and prepares reports on supervised visitation sessions, which become part of the Family Court case file.  (*Id.* ¶¶ 51–52.)  According to the plaintiff, Bykhovsky permitted only one supervised visit in April 2021 because of "scheduling conflicts," and the CFS reports describe issues scheduling supervised visitation sessions with Bykhovsky throughout 2021.  (*Id.* ¶¶ 53, 67–68, 71.)  The plaintiff alleges that Referee Byun and Murgolo took no action, even though they knew that

---

[3] The family offense petition is under File No. 308715 (*see* ECF No. 40 at 101), and the petition for custody is under File No. 42117 (*id.* ¶ 52).

Bykhovsky was not bringing the children to supervised visitation sessions.  (*Id.* ¶¶ 57, 62, 66, 70–73.)

On September 7, 2021, the plaintiff moved to hold Bykhovsky in contempt for violating the Family Court's supervised visitation order.  (*Id.* ¶ 77.)  Judge McFarland held a hearing on the motion on September 22, 2022.  (*Id.* ¶ 78.)  The plaintiff alleges that he could not prepare for the hearing, because he did not have access to the complete CFS reports; he says that Hiatt and Murgolo got see the reports, which "are released only to counsel of record" and "are not made available to pro se litigants."  (*Id.* ¶¶ 81–88.)  He further alleges that Judge McFarland "refused to accept the relevant CFS reports into evidence, despite their being Court-ordered and part of the judicial file," that Murgolo "knowingly misrepresented the facts to the [Family] Court in order to defeat a contempt finding, in what was a coordinated act of collusion with Hiatt," and that the plaintiff could not meet his evidentiary burden for civil contempt without the reports. (*Id.* ¶¶ 90–91, 96–102.)  Judge McFarland denied the plaintiff's motion for contempt.  (*Id.* ¶ 103.)

The plaintiff makes additional claims about court-ordered visitation during 2022.  He alleges that "supervised visits continued, but only when [Bykhovsky] chose to comply," and that he "repeatedly brought to the [Family] Court's attention that the delay in adjudicating the[] family offense petitions was causing irreparable harm to his relationship with his children."  (*Id.* ¶¶ 115–16.)  For example, the plaintiff says that as of January 24, 2022, Murgolo "had reviewed no fewer than six (6) CFS reports, all of which consistently documented [Bykhovsky]'s active and deliberate obstruction of even supervised visitation, in direct violation of court orders," but that neither Murgolo nor his law firm "made a single substantive application to the [Family] Court addressing the overwhelming, consistent, and well-documented evidence of parental

4

alienation by [Bykhovsky]." (*Id.* ¶¶ 121–25.)  The plaintiff also complains about delays, including by Referee Byun and Judge Brown, in adjudicating additional contempt motions.  (*See, e.g.*, *id.* ¶¶ 162–67, 262–71.)

On January 18, 2024, Referee Byun ordered reintegration therapy for the plaintiff and one of his children.  (*Id.* ¶ 334.)  After the first session in April 2024, Aurora Counseling Services LLC, the state-approved vendor for reintegration therapy, reported that the plaintiff's child did not want to have sessions with him, which the plaintiff says was the result of Bykhovsky's "parental alienation."  (*Id.* ¶¶ 335–38.)  The plaintiff alleges that Murgolo "failed to act" on the report, "thereby abdicating his professional and fiduciary responsibilities."  (*Id.* ¶ 339.)  The plaintiff makes similar allegations about subsequent reintegration therapy sessions throughout 2025.  (*Id.* ¶¶ 340–88.)  The plaintiff alleges that Referee Byun and Murgolo violated their obligations to the child by not intervening to do something about the "parental alienation." (*Id.* ¶¶ 380–81, 387–88.)

> **b.        Discussion of the Plaintiff's Religious Beliefs in Family Court Proceedings**

The plaintiff alleges that on March 5, 2021, Referee Byun "denigrated" and "demean[ed]" his religious beliefs when she called them "contradictory."  (*Id.* ¶¶ 50, 327.)  He "was again subjected to religious bias on August 7, 2024, when Referee Byun claimed [the plaintiff] had to 'choose' one religion," which "ignored [his] lifelong dual-faith upbringing, Russian Orthodox Christian and Russian Jewish."  (*Id.* ¶ 328.)  The plaintiff filed a complaint with the New York State Commission on Judicial Conduct, and the matter was referred to the Supervising Judge of the Richmond County Family Court, Judge Darvil, who "notified [the plaintiff] on December 23, 2024, that the issue would be investigated."  (*Id.* ¶ 329.)  On September 19, 2025, the plaintiff asked Judge Darvil for an update on the investigation, but as of

5

filing the second amended complaint, "no response is forthcoming from anyone at the Richmond County Family Court." (*Id.* ¶¶ 331–32.)

### c.       Family Court Orders on the Petitions

On May 12, 2022, Referee Byun dismissed the first family offense petition and "the majority of the second petition." (*Id.* ¶ 134.)  The Family Court also vacated the full Stay-Away Order of Protection and granted unsupervised visitation between the plaintiff and one of his children; the court continued supervised visitation for his other child. (*Id.* ¶ 140.)  On July 18, 2022, Bykhovsky filed a third family offense petition, which the court dismissed on September 27, 2023. (*Id.* ¶¶ 153, 156.)  On September 30, 2023, the Family Court dismissed the remainder of the second family offense petition, "almost three (3) years after it was filed." (*Id.* ¶ 137.)

The trial on the cross-petitions for custody of the children began on September 8, 2025, before Referee Byun. (*Id.* ¶¶ 389–90.)  The plaintiff moved to admit police body-worn camera videos, to which Murgolo objected "[i]n a further attempt to conceal misconduct." (*Id.* ¶ 396.)  Referee Byun did not admit the videos into evidence. (*Id.* ¶¶ 391–94.)  The plaintiff filed an interlocutory motion for reconsideration of this ruling, "but the Richmond County Family Court refused to accept this filing." (*Id.* ¶ 397.)

On April 28, 2026, Referee Byun granted Bykhovsky sole legal and residential custody of the children and denied the plaintiff's custody petition. (*See* ECF No. 60 at 1.)[4]  According to Referee Byun, the custody and visitation petitions "were not heard until March 3, 2021 due to

---

[4] The plaintiff filed a redacted version of this order as part of his "Notice of Supplemental Authority" on July 6, 2026. (*See* ECF No. 60 at 5–17.)  The order is integral to the complaint because the plaintiff alleges that Referee Byun's decisions throughout the Family Court proceedings violated his constitutional rights. *See, e.g.*, *Schvimmer v. Randall*, No. 18-CV-7419, 2022 WL 4586086, at *14 (E.D.N.Y. Sept. 29, 2022) (holding that court could consider state court records where complaint attacked state court procedures, cited numerous orders, and claimed various hearings and rulings were unfair).

delays caused by the Covid-19 pandemic." (*Id.* at 7.)  Referee Byun also rejected the plaintiff's allegations that Bykhovsky "engaged in acts of parental alienation," holding that Bykhovsky would "do what is required" of her. (*Id.* at 15.)  In addition, the referee credited a forensic evaluator's determination "that there was no parental alienation" on Bykhovsky's part, as well as the evaluator's finding that the plaintiff, "alienated himself [from his children] by his own conduct." (*Id.*)[5]  Referee Byun concluded, however, that "parenting time with the [plaintiff] serves the best interest of the children" and granted the plaintiff "parenting time." (*Id.* at 16.)[6]

### d.    The Federal Action

The plaintiff alleges that he is the victim of "a persistent and ongoing pattern of constitutional violations, as well as pendent state law claims, carried out by governmental entities, agents and officials who have acted to deprive the plaintiff's children of the love and care of their father," resulting "in the de facto termination of plaintiff's parental rights without appropriate due process and in direct contravention of his constitutional protections." (ECF No. 40 ¶ 2.)

The plaintiff brings constitutional claims against the Family Court judges, support magistrates, and Referee Byun under 42 U.S.C. § 1983, and petitions for Article 78 proceedings to compel the Family Court to take certain actions.  The plaintiff alleges that Referee Byun violated his First Amendment rights by commenting on the plaintiff's religious beliefs (*id.* ¶¶ 413–26 (Count I)); that Referee Byun and Judge Brown violated the Equal Protection Clause of the Fourteenth Amendment by denying the plaintiff access to CFS reports (*id.* ¶¶ 427–44 (Count II)); and that Referee Byun and Judge Brown denied the plaintiff due process by delaying

---

[5] The evaluator came to this conclusion after interviewing the plaintiff. (ECF No. 60 at 15.)

[6] It is not clear from the record before the Court what, if anything, is still pending in the Family Court proceedings.

the Family Court proceedings (*id.*¶¶ 445–40 (Count III), ¶¶ 441–60 (Count IV)).  The plaintiff also makes a *Monell* claim, based on Administrative Judge Jolly's alleged failure to train Referee Byun and Judge Brown.  (*Id.* ¶¶ 513–22 (Count X).)

The plaintiff moves under New York State Article 78 to: (1) compel Referee Byun to adjudicate the plaintiff's pending contempt motions (*id.* ¶¶ 461–70 (Count V)); (2) compel Judge McFarland, Judge Steinberg, Support Magistrate Cabrera, and Referee Byun to refer Hiatt to the state bar disciplinary committee (*id.* ¶¶ 503–12 (Count IX)); (3) and compel Judge Darvil, the Supervising Judge of the Richmond County Family Court, to investigate Referee Byun (*id.* ¶¶ 523–29 (Count XI)).[7]

In addition, the plaintiff alleges legal malpractice and attorney misconduct against the court-appointed attorney for the children, Murgolo and his law firm, Murgolo & Rutigliano, Attorneys at Law LLP.  (*Id.* ¶¶ 482–502 (Counts VII and VIII).)  Finally, the plaintiff alleges a civil racketeering ("RICO") conspiracy under 18 U.S.C. §§ 1962(c) and 1964(c) against Referee Byun, Murgolo, and Murgolo & Rutigliano, Attorneys at Law LLP.  (*Id.* ¶¶ 530–39 (Count XII).)  The plaintiff seeks monetary damages, as well as a range of injunctive and declaratory relief.

## II.    Procedural Background

The plaintiff filed this action on April 9, 2025.  (ECF No. 1.)  On April 22, 2025, the Court ordered the plaintiff to show cause why the Court should not dismiss the action for lack of subject matter jurisdiction due to the domestic relations exception to federal question jurisdiction, abstention due to ongoing state proceedings pursuant to *Younger v. Harris*, 401 U.S.

---

[7] The plaintiff withdrew his claim under Article 78 for a determination of whether Referee Byun "proceeded in excess of the [Family] Court's jurisdiction by initiating and commencing a custody trial without first adjudicating" the plaintiff's "ten (10)" contempt motions.  (ECF No. 40 ¶¶ 471–81 (Count VI); ECF No. 52.)

37 (1971), and immunity under the Eleventh Amendment for the Judicial Defendants. (ECF No. 8 at 2–5.) The Court also ordered the plaintiff to show cause why the Court should not dismiss the action for failure to state a claim based on judicial and quasi-judicial immunity. (*Id.* at 5–6.) The plaintiff responded on May 22, 2025, arguing that he "does not wish this federal court to get involved in the ongoing dispute over custody visitation rights with his two minor children," and instead "simply seeks federal review of systemic unconstitutional policies and practices by state actors that have severely burdened familial rights." (ECF No. 18 at 1.)

The plaintiff has amended his complaint twice. (*See* ECF Nos. 17, 40.) On October 24, 2025, the defendants moved to dismiss the second amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF Nos. 44, 45.) The plaintiff opposed the motions (ECF No. 54), and the defendants replied (ECF Nos. 55, 56). On February 10, 2026, the plaintiff requested leave to file a third amended complaint to assert class action allegations on behalf of similarly-situated plaintiffs. (ECF No. 58.) The Court denied the motion because a *pro se* plaintiff "cannot bring a class action on behalf of others." (*See ECF Order dated Feb. 10, 2026* (quoting *Chapman v. United States Dep't of Just.*, 558 F. Supp. 3d 45, 49 (E.D.N.Y. 2021)).)

On March 24, 2026, the plaintiff filed a "Notice of Supplemental Authority" "to advise the Court of newly issued disciplinary actions that [are] directly relevant" to his allegations. (ECF No. 59 at 1.) The plaintiff attached a letter from the New York State Attorney Grievance Committee, in an unrelated matter, to someone named Mickey Berlianshik. (*Id.* at 5.) The Committee explained that it had "issued a Letter of Admonition" to Robert Hiatt, Bykhovsky's attorney, because Hiatt's "threatening emails" to Mr. Berlianshik's lawyer, on which Mr. Berlianshik was copied, "were improper because they were undignified and discourteous and Mr. Hiatt copied you on the emails even though he knew you were represented by [counsel]." (*Id.*)

9

The Committee determined that this conduct violated the New York Rules of Professional Conduct.  (*Id.*)

The plaintiff filed another notice on July 6, 2026.  (ECF No. 60.)  He attached a heavily redacted version of the Family Court's April 28, 2026 decision granting Bykhovsky sole legal and residential custody of the minor children.  (*Id.* at 5–17.)  He also attached a complaint in an unrelated Richmond County case, in which someone named Aren Kempf alleged that lawyers from Margulo & Rutigliano committed legal malpractice.  (*Id.* at 21–38.)

## LEGAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id*.  When considering dismissal of an action, "the court should consider the Rule 12(b)(1) challenge first." *Burlington Ins. Co. v. MC&O Masonry, Inc.*, No. 17-CV-2892, 2018 WL 3321427, at *1 (E.D.N.Y. July 5, 2018) (quoting *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990)).  "[I]n resolving a Rule 12(b)(1) motion, 'a district court . . . may refer to evidence outside the pleadings.'" *Molokotos-Liederman v. Molokotos*, No. 23-CV-1654, 2023 WL 5977655, at *5 (S.D.N.Y. Sept. 14, 2023) (quoting *Makarova*, 201 F.3d at 113).

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss a cause of action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a 12(b)(6) challenge, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the

10

reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although "detailed factual allegations" are not required, a complaint that includes only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citation modified). When deciding a Rule 12(b)(6) motion, the Court "accept[s] all factual allegations in the complaint as true and draw[s] all inferences in the [non-moving party's] favor." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

Because the plaintiff is proceeding *pro se*, the Court construes his complaint liberally and evaluates it by "less stringent standards than formal pleadings drafted by lawyers," *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and interprets it to raise "the strongest arguments" that it suggests, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir.2006)) (citation modified); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally" (citations omitted)).

## DISCUSSION

### I.    Abstention

#### a.    Domestic Relations Abstention

The defendants argue that the Court does not have subject matter jurisdiction over the plaintiff's Family Court claims because of the domestic relations exception. (ECF No. 44-1 at 17–19; ECF No. 47 at 13–15.) The plaintiff responds that the "domestic relations exception is narrowly confined to cases seeking divorce, alimony, or child support" and does not apply to his

11

constitutional or state law claims.  (ECF No. 54 at 8 (citing *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992); *Southerland v. City of New York*, 680 F.3d 127, 143 (2d Cir. 2012)).)

"[I]n a non-diversity case involving a child custody dispute — [] '[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States.'" *Deem v. DiMella-Deem*, 941 F.3d 618, 624 (2d Cir. 2019) (quoting *In re Burrus*, 136 U.S. 586, 593–94 (1890)) (collecting cases).  The domestic relations abstention doctrine allows federal courts to abstain from exercising federal question jurisdiction over claims involving domestic relations issues that can be fully and fairly determined by the state courts.  *See Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990) (per curiam).[8]  "[E]ven if subject matter jurisdiction lies over a particular matrimonial action," including a child custody action, "federal courts may properly abstain from adjudicating such actions in view of the greater interest and expertise of state courts in this field" and "should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts."  *Id.* at 14 (citations omitted); *see also Deem*, 941 F.3d at 621 ("Although the domestic relations '*exception*' to subject matter jurisdiction recognized by the Supreme Court in *Ankenbrandt* [] does not apply in federal-question cases, the domestic relations *abstention* doctrine articulated in *American Airlines* does.").

This case is "squarely governed" by the domestic relations abstention doctrine articulated in *American Airlines* and *Deem*.  *Deem*, 941 F.3d at 623.  Deem filed a federal action against his wife, their marriage counselor, and others, alleging federal constitutional and state law claims,

---

[8] In diversity jurisdiction cases, the domestic relations exception deprives federal courts of diversity jurisdiction where a plaintiff seeks to modify or interpret the terms of an existing divorce, alimony, or child-custody decree.  *See Ankenbrandt*, 504 U.S. at 704.  The *Akenbrandt* exception to diversity jurisdiction does not apply here because all the parties are residents of New York.

after a state family court issued a temporary order of protection requiring Deem to refrain from contact with his children during the divorce proceedings. *Id.* at 620. The Second Circuit upheld the district court's *sua sponte* dismissal of Deem's constitutional claims based on *American Airlines* because the claims that the defendants "conspired to maliciously prosecute [Deem] and to violate his right to intimate association with his children" arose out of state family court divorce proceedings, were "on the verge of being matrimonial in nature," and were "capable of being fairly resolved in state court." *Id.* at 620, 623–25.

In this case, the plaintiff sues judges, support magistrates, the court referee, and the court-appointed attorney for the children for their actions and decisions in the Family Court proceedings, including judicial officers' decisions on motions, evidentiary rulings, and protective orders, as well as the court-appointed attorney's decisions in connection with Bykhovsky's conduct during court-ordered visitation and reintegration therapy sessions. These claims "begin and end in a domestic dispute," which the state Family Court is "better suited" to adjudicate. *Thomas v. Martin-Gibbons*, No. 20-3124, 2021 WL 2065892 (2d Cir. May 24, 2021) (summary order) (quoting *Schottel v. Kutyba*, No. 06-1577, 2009 WL 230106, at *1 (2d Cir. Feb. 2, 2009) (summary order)). If the plaintiff believes that the Family Court violated his rights, "there is no obstacle to their full and fair determination" either in the Richmond County Family Court or on appeal to the New York state appellate courts. *Am. Airlines*, 905 F.2d at 14 (per curiam) (citations omitted).

Citing *Southerland v. City of New York*, 680 F.3d 127, 143 (2d Cir. 2012), the plaintiff contends that the domestic relations exception does not apply to his constitutional claims, because "[f]ederal courts routinely adjudicate § 1983 claims arising from family court misconduct where relief does not require modification of custody orders." (ECF No. 54 at 8.)

13

His reliance on *Southerland* is misplaced. *Southerland* was not a custody case or a challenge to decisions by family court judges and attorneys. Rather, Southerland and his children, in a lawsuit against the City of New York and a case worker from the New York City Administration for Children's Services ("ACS"), claimed that ACS took custody of children during a child abuse investigation in violation of the Fourth and Fourteenth Amendments. *See Southerland*, 680 F.3d at 131–32, 138–39. The Second Circuit affirmed in part and vacated in part the district court's decision to grant summary judgment on the Fourth and Fourteenth Amendment claims, and remanded for further proceedings. *Id.* at 162. The Second Circuit did not discuss — or even mention — domestic relations abstention.

Accordingly, the Court declines to exercise jurisdiction over all of the plaintiff's claims based on domestic relations abstention.

### b.      *Younger* **Abstention**

According to the defendants, courts in the Second Circuit apply *Younger* to dismiss federal cases involving ongoing state proceedings that involve child custody petitions where the plaintiff has a remedy in state court, and the Court should dismiss on that basis. (ECF No. 44-1 at 19–21; ECF No. 47 at 15–17.) The plaintiff responds that *Younger* abstention does not apply because the case does not fit any of the three narrow categories of *Younger* abstention described in *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013). (ECF No. 54 at 8–10.)

"The defining feature of *Younger* abstention is that even though either a federal or a state court could adjudicate a given claim, when there is an ongoing state proceeding in which the claim can be raised, and when adjudicating the claim in federal court would interfere unduly with the ongoing state proceeding, the claim is more appropriately adjudicated in state court." *Kirschner v. Klemons*, 225 F.3d 227, 236 (2d Cir. 2000). "This doctrine of federal abstention

14

rests foursquare on the notion that, in the ordinary course, a state proceeding provides an adequate forum for the vindication of federal constitutional rights." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (quoting *Cullen v. Fliegner*, 18 F.3d 96, 103 (2d Cir. 1994)).  *Younger* abstention is appropriate in "exceptional" circumstances when pending state court proceedings fall into one of three categories: (1) state criminal prosecutions; (2) civil enforcement proceedings that are "akin to criminal prosecutions;" or (3) civil proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc.*, 571 U.S. at 72–73 (citation modified).  Moreover, federal courts routinely apply the *Younger* abstention doctrine to dismiss complaints in which plaintiffs seek intervention in family court proceedings adjudicating or enforcing custody and visitation rights.  *E.g.*, *Falco v. Justs. of the Matrimonial Parts of Supreme Ct. of Suffolk Cnty.*, 805 F.3d 425, 428 (2d Cir. 2015); *Bukowski v. Spinner*, 709 F. App'x 87, 88 (2d Cir. 2018) (summary order); *McIntosh v. White*, No. 16-CV-6654, 2017 WL 1533539, at *3 (E.D.N.Y. Apr. 27, 2017); *Wrobleski, v. City of New York*, No. 18-CV-8208, 2021 WL 4392548, at *4 (S.D.N.Y. Sept. 24, 2021).  "The *Younger* doctrine is as applicable to suits for declaratory relief as it is to those for injunctive relief." *Kirschner*, 225 F.3d at 235.[9]

The Second Circuit has held that child custody proceedings "clearly fall within *Sprint*'s third category: pending State civil proceedings involving orders 'uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Falco*, 805 F.3d at 428 (quoting *Sprint Commc'ns Inc.*, 571 U.S. at 78).[10]  In Counts I through IV and Count X, the plaintiff seeks

---

[9] The Second Circuit has held that "*Younger* abstention is not appropriate with respect to [a] claim for money damages under § 1983 . . . because it is a claim for money damages and not for declaratory or injunctive relief." *Kirschner*, 225 F.3d at 237–38.  Accordingly, the Court addresses *Younger* abstention only with respect to the federal claims for declaratory and injunctive relief.

[10] The plaintiff cites *Bellinsky v. Galan*, No. 24-1351, 2025 WL 2047809 (10th Cir. July 22, 2025), *cert. denied*, 223 L. Ed. 2d 582 (Jan. 26, 2026), for the proposition that courts must "conduct the required

declaratory judgments that the Judicial Defendants violated his rights, injunctive relief

prohibiting similar future conduct, and attorneys' fees and costs for federal constitutional claims

arising out of the Family Court child custody proceedings.  (ECF No. 40 ¶¶ 413–60, 513–522,

444.)[11]  He challenges the Family Court's policy of providing third-party neutral reports —

including the CFS reports from Family Court-ordered supervised visitation and the Aurora

reports from Family Court-ordered reintegration therapy sessions — to attorneys but not to *pro*

*se* parties.  (*Id.* ¶¶ 431, 454, 516.)  He also challenges the Family Court's delay in adjudicating

his motions to compel compliance with court-ordered visitation (*id.* ¶¶ 448, 454, 516), and the

Family Court's decision to hold the custody trial before adjudicating the plaintiff's motion to

compel compliance with the Family Court-ordered visitation (*id.* ¶ 516).  These claims

indisputably "implicate[] the way that New York courts manage their own [child] custody

proceedings — a subject in which 'the states have an especially strong interest.'"  *Falco*, 805

F.3d at 427 (quoting *Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel*, 490 F.2d 509, 516

(2d Cir. 1973)).  Granting the declaratory and injunctive relief the plaintiff seeks "would

interfere with a '[s]tate court's ability to perform its judicial function in . . . [an ongoing] custody

proceeding.'"  *Bukowski*, 709 F. App'x at 88 (summary order) (quoting *Falco*, 805 F.3d at 428);

*see also Wrobleski*, 2021 WL 4392548, at *4 (citation omitted) ("[A] plaintiff who 'raise[s]

---

*Sprint* gatekeeping analysis" to determine if a case falls within one of the three *Sprint* categories. However, in the Second Circuit, as explained above, federal actions that challenge state Family Court proceedings fall within the third *Sprint* category.  *See Falco*, 805 F.3d at 428 (quoting *Sprint*, 134 S. Ct. at 591); *Bukowski*, 709 F. App'x at 88 (summary order) (applying *Younger* abstention doctrine to claims that a parent "suffered various constitutional injuries arising from temporary state-court orders related to her custody and visitation rights"); *McIntosh*, 2017 WL 1533539, at *3; *Wrobleski*, 2021 WL 4392548, at *4.

[11] In Count I, the plaintiff also sues Referee Byun under 42 U.S.C. § 1985 and alleges that he "has suffered damages."  (ECF No. 40 ¶ 426.)  The plaintiff's claim for damages is addressed in the immunity section below.

substantive and procedural due process claims' in an attempt to mount 'a collateral attack on New York Family Court orders issued in an ongoing custody proceeding . . . f[alls] squarely within the class of cases in which *Younger* abstention is warranted.'").  The plaintiff does not explain why he cannot seek relief on these claims from the state courts, including by appealing the Family Court's decisions in his child custody proceedings or instituting an Article 78 proceeding in state court.  *See Spargo v. New York State Comm'n on Jud. Conduct*, 351 F.3d 65, 78 (2d Cir. 2003) ("[U]nder *Younger,* it is the plaintiff's burden to demonstrate that state remedies are inadequate.").

Accordingly, the Court also abstains from exercising subject-matter jurisdiction under *Younger* over Counts I through IV and Count X to the extent those claims seek declaratory or injunctive relief.[12]

## II.    Immunity

### a.    Eleventh Amendment Sovereign Immunity

Even if the Court did not abstain, the Court does not have subject matter jurisdiction over the plaintiff's claims against the Judicial Defendants in their official capacities because they are immune from suit under the Eleventh Amendment.  The Eleventh Amendment "bars a federal court from hearing suits at law or in equity against a State brought by citizens of that State or another." *T.W. v. N.Y. State Bd. of L. Exam'rs*, 110 F.4th 71, 91 (2d Cir. 2024) (quoting *Vega v. Semple*, 963 F.3d 259, 281 (2d Cir. 2020)).  "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless

---

[12] Because the Court abstains based on domestic relations and *Younger*, the Court does not address the Judicial Defendants' argument that the Court should abstain pursuant to *Disability Rights New York v. New York*, 916 F.3d 129 (2d Cir. 2019) and *O'Shea  v. Littleton*, 414 U.S. 488 (1974) (ECF No. 44-1 at 21–22), or the Attorney Defendants' argument that the Court should abstain based on the *Rooker-Feldman* doctrine (ECF No. 47 at 17–19).

Congress has abrogated the states' Eleventh Amendment immunity." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (citation modified).  New York has not waived its Eleventh Amendment immunity for damages claims brought under Section 1983, *see Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38, 40 (2d Cir. 1977), and Congress did not abrogate the state's immunity in enacting Section 1983, *see Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990).  Indeed, courts routinely dismiss claims against New York judges and court officers sued in their official capacities on Eleventh Amendment grounds.  *E.g.*, *Thomas v. Martin-Gibbons*, 857 F. App'x 36, 37 (2d Cir. 2021) (summary order) (state court judges); *Leibovitz v. Barry*, No. 15-CV-1722, 2016 WL 5107064, at *5–6 (E.D.N.Y. Sept. 20, 2016) (state court officers).

The plaintiff seeks multiple declarations that Referee Byun, Judge Brown, and Judge Jolly, acting in their official capacities, violated his constitutional rights.  (ECF No. 40 ¶¶ 21–27, 413–60 (Counts I–IV), 513–22 (Count X).)  The claims relate to the plaintiff's allegations that Referee Byun's questioned his religious beliefs, that he did not have access to certain reports, and that there were delays in the Family Court proceedings.  (*Id.* ¶¶ 413–60 (Counts I–IV), 513–22 (Count X).)  The Second Circuit has "generally held that the type of retrospective relief that [the plaintiff] seeks here — a declaration that the State violated his federal rights in the past — is barred by the Eleventh Amendment." *Kates v. New York*, No. 24-1863, 2025 WL 366698, at *1 (2d Cir. Feb. 3, 2025) (collecting cases); *see also Ward v. Thomas*, 207 F.3d 114, 119 (2d Cir. 2000) (explaining that "suits against states and their officials seeking damages for past injuries are firmly foreclosed by the Eleventh Amendment," and plaintiffs cannot pursue a "declaratory judgment that the state had violated federal law in the past"); *United States v. Yonkers Bd. of Educ.*, 893 F.2d 498, 503 (2d Cir. 1990) (explaining that the Eleventh Amendment "gives a state,

18

and state officials acting in their official capacities, protection against suits by citizens for damages for past wrongs"); *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (indicating that the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past")).

Accordingly, to the extent that the plaintiff seeks damages or retrospective declaratory relief under Section 1983 in Counts I–IV and Count X, those claims are dismissed for lack of subject matter jurisdiction. *See Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54 (1996) (claims barred by Eleventh Amendment immunity are properly dismissed for lack of subject matter jurisdiction).[13]

### b.    Judicial Immunity

Moreover, even if the Court had — and exercised — subject matter jurisdiction over the plaintiff's claims, the Court would still dismiss his federal claims based on judicial immunity. The plaintiff brings constitutional claims under 42 U.S.C. §§ 1983 and 1985 against Referee Byun, Judge Brown, and Judge Jolly, in their official capacities (ECF No. 40 ¶¶ 21–27, 413–60 (Counts I–IV), 513–22 (Count X)), and a civil RICO conspiracy under 18 U.S.C. §§ 1962(c) and 1964(c) against Referee Byun, in her official capacity, and Defendants Murgolo and Murgolo & Rutigliano, Attorneys at Law LLP (*id.* ¶¶ 530–39 (Count XII)). However, "it is . . . well established that officials acting in a judicial capacity are entitled to absolute immunity against

---

[13] *Ex Parte Young*, which permits a plaintiff to seek prospective injunctive relief or declaratory relief against a state official acting in his or her official capacity for ongoing violations of federal law, *Green v. Mansour*, 474 U.S. 64, 68 (1985), does not apply here. "In determining whether a litigant's claim falls under the *Ex parte Young* exception, we ask two questions: whether the complaint (1) alleges an ongoing violation of federal law; and (2) seeks relief properly characterized as prospective." *T.W. v. New York State Bd. of L. Exam'rs*, 110 F.4th 71, 91 (2d Cir. 2024) (quoting *Vega*, 963 F.3d at 281 (citation modified)), *cert. denied*, 145 S. Ct. 2700 (2025). The plaintiff's claims do not, as he argues in his opposition, "allege[] ongoing violations." (ECF No. 54 at 11–12.) The plaintiff seeks declaratory relief because the defendants "violated [his] rights," and "[i]njunctive relief prohibiting similar future conduct." (*See, e.g.*, ECF No. 40 ¶ 426.) Accordingly, *Ex Parte Young* does not apply.

§ 1983 actions, and this immunity acts as a complete shield to claims for money damages" as well as injunctive relief. *Montero v. Travis*, 171 F.3d 757, 760–61 (2d Cir. 1999) (per curiam); *see also Walker v. NYS Just. Ctr. for Prot. of People with Special Needs*, 493 F. Supp. 3d 239, 248 (S.D.N.Y. 2020) ("Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities.").[14]  Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009).  "[E]ven allegations of bad faith or malice cannot overcome judicial immunity," *id.* at 209, because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation," *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994).  The Second Circuit has held that absolute judicial immunity also precludes civil RICO claims against New York judges acting in their judicial capacity.  *See Brady v. Ostrager*, 834 F. App'x 616, 617–18 (2d Cir. 2020) (summary order).

The plaintiff alleges that Judge Brown was "openly hostile and aggressive" toward him (ECF No. 40 ¶ 267), and did not sign two of his trial subpoenas (*id.* ¶¶ 284, 286), which "sabotaged" the proceedings and "effectively den[ied] [him] a fair trial" (*id.* ¶ 289).  He also complains about delays adjudicating his contempt motions, and that Judge Brown and Referee Byun repeatedly denied him full access to reports about supervised visitation and reintegration therapy sessions because he is *pro* se.  (*Id.* ¶¶ 291–313.)  As an initial matter, the case law is clear that "[a]bsolute judicial immunity extends to court-appointed referees," like Referee Byun. *Witcher v. Moriber*, No. 21-CV-6168, 2022 WL 1085297, at *2 (E.D.N.Y. Apr. 11, 2022) (citing

---

[14] The 1996 amendments to Section 1983 provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." *Montero*, 171 F.3d at 761 (citing Federal Courts Improvement Act of 1996, § 309(c), Pub. L. No. 104–317, 110 Stat. 3847, 3853 (1996) (amending 42 U.S.C. § 1983)).  The plaintiff does not allege either, so this exception does not apply.

*Wilson v. Wilson-Polson,* 446 F. App'x 330, 331 (2d Cir. 2011)) (collecting cases). Moreover, the acts the plaintiff challenges are "acts arising out of, or related to" the Family Court proceedings and are therefore "judicial in nature." *Bliven*, 579 F.3d at 210; *see also Witcher*, 2022 WL 1085297, at *2 (holding the Family Court referee presiding over a visitation dispute was entitled to absolute judicial immunity). Count X, in which the plaintiff alleges *Monell* liability for the failure to train Judge Brown and Referee Byun related to the same judicial actions against Judge Jolly, Administrative Judge for the New York City Family Court, is dismissed for the same reasons.

It is similarly well established that the court-appointed attorneys for children[15] are entitled to absolute quasi-judicial immunity for actions taken within the scope of their appointment. *See Yapi v. Kondratyeva*, 340 F. App'x 683 (2d Cir. 2009) (summary order) (applying common law quasi-judicial immunity in a Section 1983 action arising out of Family Court proceedings); *Lewittes v. Lobis*, 164 F. App'x 97, 98 (2d Cir. 2006) (amended summary order) (holding that the "guardian ad litem . . . and his firm are also entitled to quasi-judicial immunity"), *cert. denied*, 549 U.S. 819 (2006); *see also Dowlah v. Dowlah*, No. 09-CV-2020, 2010 WL 889292, at *7 (E.D.N.Y. Mar. 10, 2010) (collecting cases). The plaintiff alleges that Murgolo did not take action to ensure that Bykhovsky complied with the Family Court-ordered supervised visitation (*e.g.* ECF No. 40 ¶¶ 57, 70–76), withheld facts and evidence from the Family Court about Bykhovsky's alleged noncompliance with Family Court-ordered visitation (*e.g.*, *id.* ¶¶ 76, 92–102), and colluded with Bykhovsky's attorney, Hiatt, to obstruct the Family Court orders and proceedings (*e.g.*, *id.* ¶¶ 104–129). According to the plaintiff, Murgolo acted in

---

[15] The "attorney for the child" is also called the "law guardian." *See People ex rel. KM v. SF*, 31 Misc. 3d 505, 509 n.3 (N.Y. Sup. Ct. 2011).

"dereliction of his duties," "failed to fulfill [his] duties," and his purported conduct constituted a "breach of fiduciary duties as AFC." (*Id.* ¶¶ 70, 100, 493). The plaintiff's allegations against Murgolo and his law firm therefore arise out of his appointment as attorney for the children in the Family Court proceeding. Murgolo is entitled to quasi-judicial immunity for this conduct.

Accordingly, the Court dismisses Counts I–IV, X, and XII with prejudice for failure to state a claim because of judicial and quasi-judicial immunity.[16]

### III.   Supplemental Jurisdiction

"[A] district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)). The Court declines to exercise supplemental jurisdiction over the plaintiff's remaining state law claims — Counts V through IX and Count XI. *See id.* at 123 ("Plaintiffs' federal-law claims were eliminated on a motion to dismiss, prior to the investment of significant judicial resources, and we can discern no extraordinary inconvenience or inequity occasioned by permitting the claims to be refiled in state court where they will be afforded a 'surer-footed reading of applicable law.'" (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))).

### IV.   Leave to Amend

Although plaintiff did not ask to amend his complaint a fourth time, the Court addresses it *sua sponte* because the plaintiff is representing himself. Leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), and courts should generally grant *pro se* plaintiffs leave to amend "at least once when a liberal reading of the complaint gives

---

[16] Because the Court dismissed all the federal claims against the defendants based on judicial immunity, the Court does not address the defendants' remaining arguments for dismissal for failure to state a claim.

22

any indication that a valid claim might be stated," *Clarke v. Leading Hotels of the World, Ltd.*, No. 15-CV-8, 2015 WL 6686568, at *5 (S.D.N.Y. Oct. 29, 2015) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (per curiam) (citation modified)).  Nevertheless, "it is within the sound discretion of the district court to grant or deny leave to amend." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (quoting *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018)).  The plaintiff has amended his complaint twice since the Court ordered him to show cause why his case should not be dismissed for lack of subject matter jurisdiction and failure to state a claim.  (*See* ECF Nos. 8, 17, 40.)  He did not cure the problems with his claims in those filings.  Leave to amend is not warranted when the "problem with [the plaintiff's] cause[] of action is substantive" and "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  As explained above, the "problem with" the plaintiff's federal action "is substantive" because of the abstention and immunity doctrines discussed at length above, so "[r]epleading would . . . be futile." *Id.*  Accordingly, the Court denies leave to amend.

**CONCLUSION**

For the reasons stated above, the Court grants dismissal of the plaintiff's federal claims and declines to exercise supplemental jurisdiction over the plaintiff's state law claims.  The Clerk of Court is respectfully directed to enter judgment dismissing the case and close the case.

**SO ORDERED.**

s/Ann M. Donnelly
_____
ANN M. DONNELLY
United States District Judge

Dated:  Brooklyn, New York
　　　July 21, 2026

23